MARK E. FERRARIO, ESQ.
Nevada Bar No. 1625
JASON K. HICKS, ESQ.
Nevada Bar No. 13149
GREENBERG TRAURIG, LLP
 10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
Email: ferrariom@gtlaw.com
        hicksja@gtlaw.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NOEL C. MURRAY and DR. SWARNA PERERA, on behalf of themselves and all others similarly situated, | Case No.:  2:18-cv-01382-MMD-GWF |
| Plaintiffs, | **MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |
| v. | **[ORAL ARGUMENT REQUESTED]** |
| PROVIDENT TRUST GROUP, LLC, and ASCENSUS, LLC, | |
| Defendants. | |

Defendants Provident Trust Group, LLC ("Provident"), and Ascensus, LLC ("Ascensus"), by and through their counsel of record, Greenberg Traurig, LLP, submit this Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to Dismiss Plaintiffs Noel C. Murray's and Swarna Perera's ("Plaintiffs") Complaint.  This Motion is made and based upon the following memorandum of points and authorities, the pleadings and papers on file herein, and any oral argument to be entertained by the Court at the time of hearing.

Dated this 8th day of October 2018.

GREENBERG TRAURIG LLP

*/s/ Mark E. Ferrario*

MARK E. FERRARIO, ESQ.
Nevada Bar No. 1625
JASON K. HICKS, ESQ.
Nevada Bar No. 13149
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135

*Attorneys for Defendants*

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada  89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

**INTRODUCTION**

Provident provides custodial and related administrative services to owners of self-directed individual retirement accounts ("SDIRAs").  Unlike traditional IRAs that limit investments to publicly traded stocks, bonds and mutual funds, SDIRAs provide their owners with flexibility to invest in "non-conventional investments" (Compl. at ¶ 3), such as "real estate, physical commodities, private mortgages, private company stock, oil and gas limited partnerships, precious metals and artwork."  (Compl. at ¶ 20).  Such non-conventional investments can have a higher potential for greater returns, but often present more risk.

Plaintiffs commenced this action after certain investments that they, and they alone, decided to make in a family of companies Plaintiffs call "Woodbridge" allegedly lost value.  Neither Ascensus nor Provident played any role in Plaintiffs' selection of these investments.  Provident merely held the investment assets and took directions from Plaintiffs.  Nothing more.  Yet, by their Complaint, Plaintiffs blame Provident for supposedly "allowing" them to choose their own investments.  Plaintiffs demand all the upside potential of the investments they chose, with none of the downside risk.  Put another way, without any factual or legal support, Plaintiffs ask the Court to shift responsibility for their investment decisions, which they now regret[1], from themselves to Provident.

Plaintiffs' four-count Complaint against Defendants alleges claims for (i) breach of contract (Count One), (ii) breach of fiduciary duty (Count Two), (iii) negligence and gross negligence (Count Three), and (iv) unjust enrichment and restitution (Count Four).  As detailed below, Plaintiffs' Complaint requires dismissal under Rule 12(b)(6) because it fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Put simply, Plaintiffs' naked and mistaken assertions of misconduct do not "nudge [their] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Plaintiffs' breach of contract claim in Count One fails as a matter of law because Plaintiffs cannot point to a single provision contained in the parties' governing Individual Retirement

---

[1] Notably, Plaintiffs acknowledge that they purchased Woodbridge securities on the advice of financial advisors (Compl. at ¶ 42), but Plaintiffs do not assert claims here against those financial advisors.

**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada  89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

Custodial Account Agreement ("Custodial Agreement") that Provident allegedly breached.  Indeed, the Custodial Agreement explicitly provides that Provident has **none** of the obligations Plaintiffs allege.  It is black letter Nevada law that to resist this motion and advance a breach of contract theory, Plaintiffs must identify a specific contractual undertaking that Provident purportedly breached.  Plaintiffs fail to do so.

Ignoring the unambiguous terms of the governing Custodial Agreement, attached as Exhibit 1 to their Complaint, Plaintiffs now seek to impose obligations upon Provident to which the parties never agreed.  From the outset, Plaintiffs incorrectly identify the Custodial Agreement's title – referring to it as a "Trust Agreement" – in a failed effort to undergird their theories.

The governing Custodial Agreement directly refutes Plaintiffs' allegations.  To quote but a few examples (Defendants address many others below):

- Contrary to Plaintiffs' assertion that Provident was a fiduciary, the Custodial Agreement expressly provides that Provident is **not** a fiduciary: "We are acting as a passive, directed, and non-discretionary custodian in holding IRA assets. Accordingly, we are not a fiduciary … with respect to your IRA, and you acknowledge and agree that we are not a fiduciary with respect to your IRA."

- Contrary to Plaintiffs' claim that Provident was obligated to determine fair market valuations of their account assets, the Custodial Agreement expressly places that obligation on Plaintiffs: "You must provide us with a credible valuation of your IRA assets in order for us to generate accurate IRS reporting."

- Contrary to Plaintiffs' theory that Provident was required to inform them of any risks in investing in particular securities, the Custodial Agreement stipulates that Plaintiffs, **not** Provident, are responsible to perform due diligence: "It is not our responsibility to review the prudence, merits, viability or suitability of any investment directed by you or your investment advisors ….  It is your responsibility to perform proper due diligence with regard to any such investment[.]"

Plaintiffs' breach of fiduciary duty claim in Count Two is equally baseless.  It is axiomatic as a threshold matter that Plaintiffs must show the existence of a fiduciary obligation and a corresponding breach of that obligation.  Plaintiffs ruminate that Provident allegedly owed them amorphous "duties of good faith, fair dealing, loyalty, due care and candor" in "fulfillment of [its] duties" under a non-existent "trust."  (Compl. at ¶ 116).  As detailed below, however, the law is clear that no such fiduciary obligations exist, and hence there is no breach.  The Ninth Circuit has long held that where parties enter into a "Custodial Agreement," like the Custodial Agreement here,

NJ 231027900v2

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

that explicitly states the custodian "owed no fiduciary duty" to the account holder, "the parties did not enter into a trust-type relationship." *Goldblatt v. FDIC*, 105 F.3d 1325, 1329 (9th Cir. 1997). Count Two should therefore be dismissed.

Plaintiffs' common law tort theories in Counts Three and Four are likewise meritless. Those claims are barred as a matter of law by (i) the plain language of the Custodial Agreement, which precludes Plaintiffs from advancing quasi-contractual theories, and (ii) the economic loss doctrine, which prohibits Plaintiffs from attempting to manufacture their tort theories from their contract claims.

In short, Plaintiffs' claims are belied by the very Custodial Agreement upon which they rely. In addition, the Securities & Exchange Commission ("SEC") – the federal agency charged with regulating the investment markets and protecting investors – explicitly cautions the investing public that SDIRA custodians, such as Provident, "are responsible only for holding and administering the assets in a self-directed IRA" and "generally do not evaluate the quality or legitimacy of any investment in the self-directed IRA or its promoters[.]" *SEC Office of Investor Education and Advocacy, Investor Alert: Self-Directed IRAs and the Risk of Fraud* (Aug. 2018) (italics omitted), available online at https://www.sec.gov/investor/alerts/sdira.html.

The SEC's admonition could not be more apt here. In *Levine v. Entrust Group., Inc.*, 2013 WL 1320498 (N.D. Cal. April 1, 2013), SDIRA investors brought a putative class action complaint against their account custodians, asserting claims similar to those Plaintiffs allege here, seeking to recover through the courts alleged losses from their own investment decisions. The Court granted defendant's Rule 12(b)(6) motion to dismiss their claims. Citing the SEC's guidance in 2011, which is substantially identical to the guidance quoted above, the Court observed that "[g]iven this statement from the SEC and the self-directed nature of the accounts, it is not plausible that plaintiffs as a general matter would rely on defendants to seek out fraud or to perform fair market valuations." *Id.* So too here.

Plaintiffs' Complaint against Provident warrants dismissal for another independent reason. Plaintiffs explicitly released any and all claims they may have against Provident under the Custodial Agreement.

NJ 231027900v2

**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

Finally, Plaintiffs' claims against Ascensus likewise fail as a matter of law. Ascensus (i) was never a party to the governing Custodial Agreement, and (ii) was never the custodian of Plaintiffs' SDIRAs. Plaintiffs' sole theory for dragging Ascensus into this suit is that it acquired Provident *after* the events underlying Plaintiffs' claims against Provident arose. (Compl. at ¶ 18). In fact, by Plaintiffs' own admission, Ascensus did not own or have any other affiliation with Provident at the time of the underlying events, and Plaintiffs do not attribute *any* alleged wrongdoing to Ascensus. Settled law makes clear that a parent corporation may not be held liable for the alleged unlawful conduct of its subsidiary merely because of their parent-subsidiary relationship.

At bottom, Plaintiffs' claims amount to nothing more than their unsupportable speculations that Provident somehow should have "saved them from themselves." Plaintiffs' theories all fail as a matter of settled law, and their Complaint requires dismissal.

## BACKGROUND AND FACTUAL STATEMENT[2]

### A. The Terms of the Governing Custodial Agreement

The centerpiece of Plaintiffs' Complaint against Provident is the Custodial Agreement, which Plaintiffs incorrectly describe as a "Trust Agreement." (Compl. at ¶ 22). Contrary to Plaintiffs' mischaracterization, the Custodial Agreement is *not* a "trust" agreement. The Custodial Agreement notes on its face that it is modeled on "Form 5305-A under section 408(a) of the Internal Revenue Code." Form 5305-A is the IRS-approved form for a **custodial** relationship, which is distinct from the IRS-approved form for a **trustee** relationship. *Compare* IRS Form 5305–A (entitled "Traditional Individual Retirement **Custodial** Account") (emphasis added) at https://www.irs.gov/pub/irs-pdf/f5305a.pdf *with* IRS Form 5305 (entitled "Traditional Individual Retirement **Trust** Account") (emphasis added at https://www.irs.gov/pub/irs-pdf/f5305.pdf.)

Review of the Custodial Agreement's pertinent terms and provisions further refutes Plaintiffs' positions.

### 1. The Agreement Makes Clear Provident Is Not a "Fiduciary"

The Custodial Agreement clearly states that Provident is not a fiduciary with respect to Plaintiffs' SDIRAs, and that no fiduciary relationship exists:

---

[2] Solely for purposes of this motion, Defendants assume Plaintiffs' factual allegations are true.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

NJ 231027900v2

- "[W]e are not a fiduciary (as this term is defined in the Code, ERISA, or any other applicable federal, state or local laws) with respect to your IRA" § 8.05(b)

- "[Y]ou acknowledge and agree that we are not a fiduciary with respect to your IRA" § 8.05(b)

- "You acknowledge and agree that nothing in this agreement will be construed as conferring fiduciary status upon us" § 8.03(a)

- "We are acting as a passive, directed, and non-discretionary custodian in holding IRA assets" § 8.05(b)

- "You further acknowledge and agree that we are strictly a passive custodian and as such do not provide … advice with respect to your IRA investments" § 8.03(e)

**2. The Agreement Makes Clear Plaintiffs – Not Provident – Are Responsible to Direct Their Investments**

The Custodial Agreement places sole responsibility for making investment decisions and directing investments on Plaintiffs.   Under the controlling contract, Provident has no role whatsoever in this regard:

- "You have exclusive responsibility for and control over the investment of the assets in your IRA" § 8.05(a)

- "You will select the type of investment for your IRA assets" § 8.05(a)

- "It is your responsibility to perform proper due diligence with regard to any … investment" § 8.05(b)

- "It is not our responsibility to review the prudence, merits, viability or suitability of any investment directed by you" § 8.05(b)

- "We do not offer any investment advice, nor do we endorse any investment, investment product or investment strategy" § 8.05(b)

- "We have no responsibility to question or otherwise evaluate any investment directions given by you" § 8.05(b)

- "We are under no obligation or duty to investigate, analyze, monitor, verify title to, or otherwise evaluate or perform due diligence for any investment directed by you" § 8.05(b)

- "We have no duty or obligation to notify you with respect to any information, knowledge, irregularities, or our concerns relating to your investment" § 8.05(b)

/ / /

/ / /

/ / /

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada  89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

### 3. The Agreement Makes Clear Plaintiffs – Not Provident – Are Responsible to Value the Assets in Their SDIRAs

The Custodial Agreement places on Plaintiffs the sole responsibility to determine and report the value of the assets in their accounts:

- "You must provide us with a credible valuation of your IRA assets in order for us to generate accurate IRS reporting" § 8.16

- "The depositor agrees to provide the custodian with all information necessary to prepare any reports required by [IRS Code] section 408(i) and Regulations sections 1.408-5 and 1.408-6" § 5.1

### 4. The Agreement Makes Clear Plaintiffs – Not Provident – Are Responsible for Any Losses Resulting from Their Investment Decisions

The Custodial Agreement makes Plaintiffs solely responsible for any losses resulting from their investment decisions and directions to Provident:

- "We will not be responsible for losses of any kind that may result from your directions to us or your actions or failures to act" § 8.03(a)

- "We will not be responsible for losses of any kind that may result from directions, actions, or failures to act by your authorized agent" § 8.03(a)

### 5. The Agreement Makes Clear Plaintiffs Have Released Their Claims

- "You agree to release, indemnify, and hold us harmless for any and all claims, actions, proceedings, damages, judgments, liabilities, costs, and expenses (including, without limitation, attorney's fees) arising from or in connection with this agreement" § 8.03(a)

### B. Plaintiffs' Investments in Woodbridge

Plaintiffs' claims stem from the bankruptcy of a group of affiliated companies that are not party to this action, and that Plaintiffs refer to collectively as "Woodbridge."[3]  Plaintiffs allege that they invested in "unregistered Woodbridge securities" that were held in their SDIRAs with Provident.  (Compl. at ¶¶ 16(a) and 16(b)).  Plaintiffs accuse Provident of failing to alert them to alleged "red flags" in time for Plaintiffs to avoid the impact of Woodbridge's bankruptcy.  Although

---

[3] Woodbridge voluntarily filed for bankruptcy in December 2017.  (Compl. at ¶ 76); *In re Woodbridge Group of Companies, LLC*, No. 17-12560 (KJC) (Bankr. D. Del.).  Plaintiffs have a right to recovery from Woodbridge in the bankruptcy proceedings, and those recoveries should be substantial.  The disclosure statement recently filed in the bankruptcy proceedings describes that some Woodbridge investors could recover up to 50% of the amount they invested and other Woodbridge investors could recover up to 70%. *Woodbridge*, Dkt. 2389 at 11; *Woodbridge*, Dkt. 2396 (Order approving Disclosure Statement).

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

NJ 231027900v2

Plaintiffs acknowledge they made their investment decisions based upon the advice of financial advisors (Compl. at ¶ 42), they have not chosen to include them in this lawsuit.

## ARGUMENT

### I.   PLAINTIFFS' COMPLAINT REQUIRES DISMISSAL UNDER R. 12(b)(6)

Under Rule 12(b)(6), a complaint must be dismissed where it "fail[s] to state a claim upon which relief can be granted[.]"  As the Supreme Court instructed in *Ashcroft v. Iqbal*, the Rules require dismissal when the plaintiff fails to allege "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To meet this standard, the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Put another way, plaintiff must come forward with "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*

Importantly, when evaluating the "plausibility" of plaintiffs' claims, the Court "need not … accept as true allegations that contradict matters properly subject to judicial notice or by [an] exhibit."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Rather, the Court may reject "'conclusory allegations which are contradicted by documents referred to in the complaint[.]'"  *Id.* at 990 (citation omitted).

Here, Plaintiffs' Complaint does not plead facts that "nudge [plaintiffs'] claims across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  It thus should be dismissed.

### II.   PLAINTIFFS' BREACH OF CONTRACT CLAIM IN COUNT ONE FAILS

At bottom, Plaintiffs' Complaint sounds in contract law.  To advance their central breach of contract claim, Plaintiffs must "show: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damage because of the breach."  *Kerr v. Bank of America, N.A.*, Case No. 3:15-cv-306 (D. Nev. Jan. 5, 2016) (Hon. Du, U.S.D.J.), *aff'd* 710 Fed.Appx. 321 (9th Cir. 2018) (citing *Saini v. Int'l Game Tech.*, 434 F.Supp.2d 913, 919-20 (D. Nev. 2006)).

Critically, "[i]t is well settled [under Nevada law[4]] that a court should enforce a contract as it was written, should not create a new contract by rewriting unambiguous terms, and has no power to

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

---

[4]     Pursuant to § 8.15 of the Custodial Agreement, Nevada law applies.

NJ 231027900v2

create a new contract." *D.E. Shaw Laminar Portfolios, LLC v. Archon Corp.*, 570 F.Supp.2d 1262, 1268 (D. Nev. 2008). And as the Ninth Circuit instructs, unambiguous contracts must be enforced according to their terms: "'[W]hen a contract is clear, unambiguous, and complete, its terms must be given their plain meaning and the contract must be enforced as written.'" *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 928 (9th Cir. 2011) (quoting *Ringle v. Bruton*, 120 Nev. 82, 93, 86 P.3d 1032 (2004)). *Accord Century Surety Co. v. Casino West, Inc.*, 677 F.3d 903, 908 (9th Cir. 2012).

Moreover, "'[r]esolution of contractual claims on a motion to dismiss is proper if the terms of the contract are unambiguous.'" *Bedrosian v. Tenet Healthcare Corp.*, 208 F.3d 220 (9th Cir. Feb. 23, 2000) (unpublished disposition) (citing *Rennie & Laughlin, Inc. v. Chrysler Corp.*, 242 F.2d 208, 209-12 (9th Cir. 1957)). *Cf. Capitol Indem. Corp. v. Blazer*, 51 F.Supp.2d 1080, 1083-84 (D. Nev. 1999) ("Interpretation of unambiguous language in a contract is a pure question of law and appropriate for disposition by summary adjudication") (citing *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1341 (9th Cir. 1989)).

The Northern District of California's opinion in *Grant v. Pensco Trust Co.*, 2014 WL 1471054 (N.D. Cal. Apr. 15, 2014) is particularly instructive. Plaintiff there sought to hold the custodian of his SDIRA accountable for his investment losses, and those of a putative class, under a breach of contract theory. Much like Plaintiffs here, plaintiff in *Grant* claimed that, among other things, defendant (i) failed to properly assess and report "the fair market value" of SDIRA assets, and (ii) distributed account statements "without verifying the fair market value of the SDIRA." *Id.* at * 2.

The Court granted defendant's motion to dismiss because "the written agreement between the parties contradicts [plaintiff]'s allegations[.]" *Id.* at * 1. The Court reasoned that "the custodial agreement explicitly states that [defendant] *does not* have a duty to ascertain the fair market value of [plaintiff]'s SDIRA assets. [Plaintiff]'s assertion that [defendant] breached duties to ascertain the fair market value of [his] SDIRA annually and report the value of any distributions to the SDIRA owner therefore fails as a matter of law." *Id.* at * 3.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

The Fourth Circuit's recent decision in *Sams v. Entrust Arizona, LLC*, 591 Fed.Appx. 229 (4th Cir. 2015), is likewise persuasive.  Plaintiff there "opened a self-directed individual retirement account (SDIRA), through which she invested with … the manager of an alleged Ponzi scheme." *Id.* at 230.  Plaintiff asserted a breach of contract claim against the custodian of her SDIRA, which the district court dismissed under Rule 12(b)(6).  *Id.*  The Fourth Circuit affirmed, concluding that plaintiff could not identify "a provision of the contract that [custodian] breached[.]" *Id.*

The same result should obtain here.  Plaintiffs' claim boils down to their allegations that Provident failed (i) "to ascertain the nature of Woodbridge Securities," (ii) "to verify, secure and safeguard the purported underlying assets of same," (iii) "to provide accurate fair market value annual valuations of Woodbridge Securities," and (iv) to prevent Plaintiffs from "engag[ing] in prohibited transactions with disqualified persons[.]"  (Compl. at ¶ 113).  But as in *Sams*, Plaintiffs cannot identify a single provision of the Custodial Agreement that imposes such duties on Provident.  To the contrary, as detailed above, the Custodial Agreement expressly provides that Provident has ***none*** of these alleged duties.

Moreover, the Custodial Agreement makes clear that Provident did not have <u>any</u> of the duties Plaintiffs allege.  Section 8.05 of the Custodial Agreement states that Plaintiffs had "exclusive responsibility and control over the investment of the assets in your IRA" and that Provident did not have "responsibility to review the prudence, merits, viability or suitability of any investment directed by the [Plaintiffs]." *Id*. at § 8.05(a).  Plaintiffs further explicitly agreed that Provident was "under no obligation or duty to investigate, analyze, monitor, verify title to, or otherwise evaluate or perform due diligence for any investment." *Id*. at § 8.05(b).  Instead, under the contract's express terms, only Plaintiffs had "responsibility to perform proper due diligence with regard to any such investment, representative, investment advisor, broker or other party." *Id.*  The Custodial Agreement further provides that Provident had no duty to "offer any investment advice, nor [] endorse any investment, investment product or investment strategy; and [it did] not endorse any investment advisor, representative, broker, or other party selected by [Plaintiffs]." *Id.*

Plaintiffs' complaints that Woodbridge securities were unregistered are equally unavailing.  Through the Custodial Agreement, Plaintiffs "represent[ed] to [Provident] that" the securities they

**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

NJ 231027900v2

acquired through their IRAs "ha[d] been registered or [were] exempt from registration under federal and state securities laws." *Id.* at § 8.03(f).

Nor do Plaintiffs' allegations regarding regulatory proceedings against Woodbridge support their breach of contract theory. Once again, Plaintiffs explicitly agreed that Provident had "no duty or obligation to notify [Plaintiffs] with respect to any information, knowledge, irregularities, or [] concerns relating to your investment or your investment advisor, broker, agent, promoter, or representative, except as to civil pleadings or court orders received by [Provident]." *Id.* at § 8.05(b). None of the enforcement activity alleged in the Complaint constitutes a "pleading" or "court order" received by Provident.  In short, Provident had no contractual obligation to notify Plaintiffs of admittedly "publicly-announced" (Compl. at ¶ 9) information regarding Woodbridge.

Respecting Plaintiffs' allegations that Provident enabled Woodbridge "to commingle and/or dissipate" Plaintiffs' assets, (Compl. at ¶¶ 27, 112 and 118), *Mandelbaum v. Fiserv, Inc.*, 787 F.Supp.2d 1226 (D. Colo. 2011), is squarely on point.  Plaintiffs there alleged that the custodians of their SDIRAs "owed, and failed to fulfill, certain duties as fiduciaries/trustees of Plaintiffs' IRAs, which duties included the duty to hold, preserve, and keep safe the trust's res, and to avoid commingling of the trust res with other assets." *Id.* at 1232.  Plaintiffs based their claims – including breach of contract, ordinary and gross negligence, breach of fiduciary duty, and unjust enrichment – upon "the contractual agreements and federal and state common law." *Id.* at 1232-33. The Court stressed that the governing agreements "contain clearly-stated and explicit provisions that indemnify the [Fiserv] Defendants from liability resulting from any claims arising from the accounts at issue" and "also clearly state that the Plaintiff investors are solely responsible for making investment decisions in connection with their funds and that the [Fiserv] Defendants will not provide any investment advice." *Id.* at 1232.

The Court granted defendants' application to dismiss all claims.  In pertinent part, the Court reasoned that "Defendants have fulfilled all their obligations as delineated in the Agreements: they provided account statements that contained the information from BMIS [Bernie L. Madoff Investment Securities LLC], which they had no obligation to verify or audit; at Plaintiffs' direction, they transferred assets to BMIS; and they had no contractual obligation to prevent Madoff or BMIS

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

from commingling Plaintiffs' assets." *Id.* at 1243.  Plaintiffs' allegations here confirm that, like in *Mandelbaum*, any commingling of assets did not occur until *after* the assets were transferred to a third party (Woodbridge) at Plaintiffs' direction.  Provident, therefore, had no duty to prevent Woodbridge from commingling assets.

Directly contrary to Plaintiffs' claim that Provident was obligated to provide fair market valuations of their SDIRA assets, § 8.16 of the Custodial Agreement states that Plaintiffs – not Provident – were obligated to "provide … a credible valuation" of the assets in the SDIRA. Moreover, Plaintiffs agreed that Provident had no duty to verify title, evaluate any investment, or "verify or ensure that such funds have been invested to purchase or acquire the asset selected by [Plaintiffs]." *Id*.

Plaintiffs' reliance on 26 C.F.R. § 1.408-2(e)(5) in support of their breach of contract claim is equally misplaced.  That regulation applies <u>only</u> to "a person other than a bank."  As Provident, the custodian, is a Nevada-chartered trust company (Compl. at ¶¶ 17 and 32(ii)), it qualifies as a <u>bank</u> under 26 U.S.C. §§ 408(h), (n), and 581 (defining banks to include state chartered trust companies).  Because Provident is a <u>bank</u> custodian, the statutory provision that serves as the basis for Plaintiffs' claim is inapplicable.  *See Lewis v. Delaware Guarantee & Trust Co.*, No. 14-CV-1779 (KAM), 2015 WL 4176403, at *10 (E.D.N.Y. Mar. 31, 2015) (holding that 26 C.F.R. § 1.408-2(e) did not apply to an entity that met the definition of "bank"), *aff'd with qualifications not relevant here*, 642 Fed.Appx. 23 (2nd Cir. 2016).

Even if 26 C.F.R. § 1.408-2(e) applied to Provident, Plaintiffs' claims would nevertheless fail as the regulation does not require an SDIRA custodian to conduct fair market value determinations.  *See Levine*, 2013 WL 2606407, at *3 (rejecting argument that 26 C.F.R. 1.408-2 imposed an obligation on an SDIRA custodian to perform a fair market valuation); *Grant v. Pensco Tr. Co.*, LLC, No. 12-CV-06084-WHO, 2013 WL 4772673, at *5 (N.D. Cal. Sept. 3, 2013) ("As in *Levine*, the defendant here, Pensco, is a custodian, not a trustee, and the regulation thus does not impose on Pensco a duty to perform a fair market valuation of the SDIRAs"). For all these reasons,

Plaintiffs' breach of contract claim (Count One) fails to state a claim upon which relief can be granted, requiring dismissal as a matter of law.[5]

### III. PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM FAILS AS A MATTER OF SETTLED LAW

Plaintiffs' breach of fiduciary duty claim (Count II) finds no support in either fact or law. "A breach of fiduciary duty claim requires Plaintiffs to show the existence of a fiduciary duty[.]" *Kerr*, Case No. 3:15-cv-306 (citing *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 880-81 (9th Cir. 2007)). Where plaintiff cannot establish the existence of a fiduciary relationship, he cannot advance a breach of fiduciary duty claim. *Id.* (granting motion to dismiss breach of fiduciary duty claim where plaintiff "fails to allege" facts demonstrating fiduciary relationship). *Cf. Jean-Louis v. J.P. Morgan Chase Bank, N.A.*, 676 Fed.Appx. 717 (9th Cir. 2017) (affirming dismissal of breach of fiduciary duty claim "as a matter of law" because plaintiff "has not plausibly alleged that the defendants owe him a fiduciary duty").

Here, Plaintiffs have not plausibly alleged the existence of a fiduciary relationship. Their breach of fiduciary duty claim therefore fails as a matter of law.

> 1. *The Express Terms of the Custodial Agreement Foreclose Plaintiffs' Breach of Fiduciary Duty Claim.*

The Custodial Agreement's terms, detailed above, flatly contradict Plaintiffs' breach of fiduciary duty claims. The contract expressly provides in Section 8.03(a) that: "[Plaintiffs] acknowledge that nothing in this agreement will be construed as conferring fiduciary status upon us." § 8.03(a). Section 8.05(b) of the Custodial Agreement further explains:

> We are acting as a passive, directed, and non-discretionary custodian in holding IRA assets. Accordingly, **we are not a fiduciary** (as this term is defined in the Code, ERISA, or any other applicable federal, state or local laws) with respect to your IRA, and **you acknowledge and agree that we are not a fiduciary** with respect to your IRA."

(Emphasis added).

---

[5] In Paragraph 113 of Count I, Plaintiffs include an assertion that Provident breached its contractual duties by "causing or knowingly permitting Class members to engage in prohibited transactions." Plaintiffs' prohibited transaction theory is addressed below.

NJ 231027900v2

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

The Ninth Circuit has long instructed that such language forecloses the existence of a fiduciary relationship. In *Goldblatt*, 105 F.3d 1325, plaintiff had opened an IRA under a "Custodial Agreement [that] specifically provided that the Bank owed no fiduciary duty to [plaintiff]." *Id.* at 1329. "Therefore[,]" the Ninth Circuit held, "the parties did not enter into a trust-type relationship." *Id.* Other courts across the nation likewise consistently conclude that such contracts create no fiduciary relationships. *See, e.g., Abbott v. Chem. Trust*, 2001 WL 492388, at *8 (D. Kan. Apr. 26, 2014) ("It is beyond dispute that plaintiffs' self-directed IRAs with [custodian] were nondiscretionary accounts… In such circumstances, the law is clear that [custodian]'s fiduciary duty to plaintiffs – to the extent such a duty exists – is limited to carrying out the transactions requested by plaintiffs") (collecting cases); *Grant v. Pensco Trust Co.*, 2014 WL 1471054 (N.D. Cal. Apr. 15, 2014) (holding custodian was not fiduciary because "[t]he custodial agreement itself states that [custodian] is not [a] fiduciary"); *Moran v. Bromma*, 2013 WL 4780772 (E.D. Cal. Sept. 4, 2013) (stating "Self–Directed IRA custodians . . . are not fiduciaries and their obligations are limited to the contract").

Accordingly, Plaintiffs agreed in their Custodial Agreement that Provident was not a fiduciary. There is no basis for the Court to find otherwise.

2.      *Provident Did Not Owe Plaintiffs a Fiduciary Duty Under Federal Law.*

The Complaint alleges that "federally-created minimum fiduciary standards" apply to Provident. (Compl. at ¶¶ 2, 4, 5, 7, 21, 26, 27, 116.) In support of these allegations, Plaintiffs rely nearly exclusively upon Code § 408 and its accompanying regulations under 26 C.F.R. § 1.408-2(e). (*Id.*) Because 26 C.F.R. § 1.408-2(e) does not apply to Provident as a bank, the regulation does not impose on Provident any of the fiduciary duties that Plaintiffs allege attach. *See Lewis v. Delaware Guarantee & Trust Co.*, No. 14-CV-1779, 2015 WL 4176403, at *10 (E.D.N.Y. Mar. 31, 2015) (holding § 1.408-2(e) did not apply to entity that met definition of "bank"), *aff'd with qualifications not relevant here*, 642 Fed.Appx. 23 (2nd Cir. 2016).

Plaintiffs' claims warrant dismissal for other independent reasons. Courts consistently reject plaintiffs' allegations that Code § 408 and its accompanying regulations create fiduciary duties. *See, e.g., Mandelbaum*, 787 F.Supp.2d at 1237 (concluding that Section 408 does not give rise to or

**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

NJ 231027900v2

create fiduciary duties); *Hines v. FiServ, Inc.*, No. 808-CV-2569-T-30AEP, 2010 WL 1249838, at *3 (M.D. Fla. Mar. 25, 2010) ("Courts applying [§ 408] of the code in relation to custodial IRA accounts have held that [] § 408 and the corresponding regulations do not create any fiduciary or other duties of care."); *Matkin v. Fidelity Nat. Bank,* No. 6:01-2189-24, 2002 WL 32060182, at *4 (D.S.C. July 11, 2002) (rejecting plaintiffs' argument that Code § 408 "imposes a statutory duty of care . . . that is independent of the custodial agreement").

Plaintiffs' reliance upon Code § 408 is likewise misplaced because "there is no private cause of action for an alleged breach of the tax code." *Scionti v. First Trust Corp.*, 1999 WL 35134588 at *17 (S.D. Tex. 1999); *Mandelbaum*, 787 F.Supp.2d at 1237-38 ("[T]he Court finds that section 408 does not create a federal common law[.]"); *Sirna v. Prudential Secs., Inc.*, No. 95-Civ.-8422, 1997 WL 53194, at *3 (S.D.N.Y. Feb. 10, 1997) ("Section 408 of the Code does no more than establish a framework whereby individuals may obtain favorable tax treatment of amounts set aside for retirement in certain circumstances.  Moreover, there is nothing in the wording or effect of the statute to suggest that Congress intended to create, via the tax code, a private right of action . . .").  And, as explained above, Plaintiffs' reliance on 26 C.F.R. § 1.408-2(e)(5) is misplaced as Provident qualifies as a <u>bank</u> and thus is excluded from the regulation.

Plaintiffs' episodic references to the fiduciary and disclosure duties under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1104, 1021-1031 (Compl. at ¶¶ 2, 21, 22) hardly merit consideration.  The ERISA provisions to which Plaintiffs refer apply only if an employer establishes or maintains the IRA.  29 U.S.C. § 1003(a).  Plaintiffs do not allege any employer established or maintained their respective SDIRAs.  Accordingly, ERISA is inapplicable to Plaintiffs' SDIRAs.  *See Charles Schwab & Co., Inc. v. Debickero,* 593 F.3d 916, 919 (9th Cir. 2010) (IRA that lacked employer oversight or ongoing employer commitment outside ERISA's scope).  *See also* 29 C.F.R. § 2510.3-2(d).  Accordingly, any claim premised on ERISA must be dismissed with prejudice.

Simply put, federal law does not create a fiduciary relationship between Plaintiffs and Provident.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

NJ 231027900v2

**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

3. *Plaintiffs' Breach of Fiduciary Duty Claim Also Fails Under State Law.*

Plaintiffs' state law breach of fiduciary duty claim, like their federal claim, fails because Provident was not a fiduciary.  As this Court observed, and the Ninth Circuit affirmed, where no fiduciary relationship exists, there can be no breach of fiduciary duty claim.  *See Kerr*, Case No. 3:15-cv-306 (collecting cases under Nevada law).  As described in the preceding section, Plaintiffs explicitly agreed in their Custodial Agreement that Provident did not serve in a fiduciary capacity.

Here, Provident only took direction from Plaintiffs.  Plaintiffs had "exclusive responsibility" under the Custodial Agreement to direct their investments.  § 8.05(a).  Accordingly, Provident cannot be liable under Nevada law for any losses Plaintiffs may have incurred through their own investment decisions.  *See Kerr, supra*.

4. *Plaintiffs Fail to State a Prohibited Transaction Claim*

In the context of a SDIRA, a "prohibited transaction" is "any improper use of an IRA account or annuity by the IRA owner, his or her beneficiary or any disqualified person."  *See IRS Guidance: Retirement Topics – Prohibited Transactions* (rev'd Feb. 2018) available online at https://www.irs.gov/retirement-plans/plan-participant-employee/retirement-topics-prohibited-transactions.  *Cf.* 26 U.S.C. § 4975; Treas. Reg. 26 C.F.R. 54.4995-1.  The IRS has catalogued "examples of possible prohibited transactions with an IRA."  *Id.*  These include borrowing money from the IRA, selling property to the IRA, using the IRA as security for a loan, or buying property for personal use (either present or future) with IRA funds.  *Id.*

Plaintiffs allege none of those things, nor do they otherwise allege facts giving rise to a prohibited transaction claim.  Plaintiffs only assert that "Defendants routinely permitted disqualified persons such as financial advisors, salespeople and brokerage firms to pay IRA custodial fees to Defendants on behalf of Class members."  (Compl. ¶ 42).

As an initial matter, the Custodial Agreement bars Plaintiffs' claims.  Section 8.03(b) provides that by entering into a transaction, Plaintiffs represented to Provident that none of the Plaintiffs' "directions or instructions or IRA investments will constitute a prohibited transaction."  Dkt. 1-2 at § 8.03(b).  Plaintiffs also agreed that Provident had "no obligation or duty to make a

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

determination, and accordingly will make no determination, as to whether any IRA investment is prohibited." *Id.*

Further, the payment of the custodial fee (Plaintiffs' sole allegation in this regard) is not a "prohibited transaction." The custodial fee is an obligation of the IRA. Dkt. 1-2 at § 8.05(h) and (i). The payment of fees that are an obligation of the IRA by a third party (*e.g.*, Plaintiff Perera's financial advisor) does not meet any of the definitions of a prohibited transaction under the Code. There is nothing in IRS Publication 590-A, which Plaintiffs cite, that provides otherwise.

Nor may Provident be held liable for any alleged prohibited transaction involving Plaintiffs' SDIRAs. *Metz v. Serfling*, 1992 WL 23491, at *6 (N.D. Ill. Feb. 6, 1992), *aff'd sub nom. Metz v. Indep. Tr. Corp.*, 994 F.2d 395 (7th Cir. 1993) (holding that where IRA trustee "certified in his Promissory Note Authorization that his transaction did not constitute a prohibited transaction under the Tax Code . . .[he] cannot foist responsibility for his tax decisions onto a non-discretionary trustee . . . by claiming that Intrust had a duty to admonish Metz that his representation was incorrect."). *See also Scionti*, 1999 WL 35134588, at *17 ("[W]ith respect to the prohibited transaction claim, First Trust had no duty to inquire whether Scionti's investment was a prohibited transaction.").

Finally, Plaintiffs cannot maintain a claim based on the Code's prohibited transaction provisions. As described above, there is no private right of action under the Code, including the prohibited transaction provision in Code § 4975, much less under the IRS publication on which Plaintiffs rely. *See Scionti*, 1999 WL 35134588, at *39.

## IV.    PLAINTIFFS' REMAINING COMMON LAW CLAIMS FAIL

Plaintiffs assert negligence and gross negligence claims in Count Three, but offer **no** meaningful allegations in support of those claims. Aside from a vague generality of "an extreme departure from ordinary standards of care," Plaintiffs do not allege, let alone "plausibly" allege, to what "ordinary standards of care" they refer. (Compl. at ¶ 121.) Further, as explained above, Plaintiffs have failed to plausibly plead that Provident had *any* duty of care with respect to the actions they allege in the Complaint.

NJ 231027900v2

Moreover, Plaintiffs' negligence-based claims fail under Nevada's economic loss doctrine. That settled doctrine "bars unintentional tort actions when the plaintiff seeks to recover 'purely economic losses.'" *Terracon Consultants Western, Inc. v. Mandalay Resort Grp.*, 125 Nev. 66, 73 (2009) (en banc) (citation omitted). A "purely economic loss" is generally defined as "the loss of the benefit of the user's bargain . . . including . . . pecuniary damage for inadequate value, the cost of repair and replacement of the defective product, or consequent loss of profits, without any claim of personal injury or damage to other property." *Calloway v. City of Reno*, 116 Nev. 250, 257 (2000), *overruled on other grounds by Olson v. Richard*, 120 Nev. 240, 241-44 (2004).

The economic loss doctrine "marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby [generally] encourages citizens to avoid causing physical harm to others." *Terracon*, 125 Nev. at 72-73 (citation omitted). As Nevada courts have long made clear, the "primary purpose" of the economic loss doctrine is "to shield a defendant from unlimited liability for all of the economic consequences of a negligent act, particularly in a commercial or professional setting." *Id.* at 74 (quoting *Local Joint Executive Bd. of Las Vegas, Culinary Workers Union, Local No. 226 v. Stern*, 98 Nev. 409, 411 (1982)).

Plaintiffs' Complaint cites only economic losses caused by their self-directed investment in Woodbridge. Application of the economic loss doctrine to Plaintiffs' negligence-based claims serves its primary purpose to limit claims and potential liability to the failure (if any) to comply with the parties' contract. Therefore, Plaintiffs' negligence-based claims should be dismissed. *See Terracon*, 125 Nev. at 69 (doctrine barred negligence claim arising from architect's services under professional contract where purely economic losses sought). *Accord ARCO Products Co. v. May*, 113 Nev. 1295 (1997) (holding that district court erred in permitting negligence claim premised on lost profits to proceed because such damages were purely economic); *see also Kelly v. Heron Ridge, Inc.*, 16 Fed. Appx. 695 (9th Cir. 2001) (applying economic loss doctrine bar to gross negligence claims); *First Magnus Fin. Corp. v. Rondeau*, 2012 WL 607563, at *3 (D. Nev. Feb. 24, 2012) (concluding that economic loss doctrine barred claims against escrow company). *See also Lamm v. State St. Bank & Tr. Co.*, 889 F.Supp.2d 1321, 1332 (S.D. Fla. 2012), *aff'd sub nom. Lamm v. State*

NJ 231027900v2

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

*St. Bank & Tr.*, 749 F.3d 938 (11th Cir. 2014) (barring tort claims against SDIRA custodian explaining that "[i]n the absence of any duties independent from those imposed by the custody agreements, Plaintiff's tort claims for negligence, gross negligence, negligent misrepresentation, and breach of fiduciary duty are barred by the economic loss rule").

Plaintiffs' unjust enrichment claim in Count Four fails as a matter of law for two principal reasons.   First, as a threshold matter, "'unjust enrichment or recovery [under] quasi-contract [principles] **applies to situations where there is no legal contract** but where the person sought to be charged is in possession of money or property which in good conscience and justice [should not be retained].'"   *Rhodes v. Designer Distribution Services, LLC*, 128 Nev. 929, 2012 WL 642434, at *3 (2012) (internal citation omitted) (emphasis added).   Plaintiffs' allegations are premised upon the *same* subject matter as the Custodial Agreement.   The existence of a contract is fatal to Plaintiffs' claim.   *Lipshie v. Tracy Inv. Co.*, 93 Nev. 370, 379 (1977) ("To permit recovery by quasi-contract where a written agreement exists would constitute a subversion of contractual principles").

Second, Plaintiffs fail to adequately plead facts supporting an unjust enrichment claim.   To prevail on their unjust enrichment claim, Plaintiffs must demonstrate (1) that Provident received a benefit at Plaintiffs' expense, and (2) that it would be unjust for Provident to "retain the benefit without payment of the value thereof."   *Certified Fire Protection, Inc. v. Precision Construction, Inc.*, 128 Nev. 371, 381 (2012) (internal citations and quotation marks omitted).   But the Complaint does not explain how Provident unjustly benefitted.   Accordingly, the doctrine of unjust enrichment is inapplicable.

Finally, Plaintiffs' restitution request is equally flawed.   Apart from their conclusory statement that "Defendants' [] conduct and receipt of funds requires them to make restitution" (Compl. at ¶ 125), Plaintiffs do not set forth any facts that Provident received any monetary benefit in connection with Plaintiffs' investments in Woodbridge.   *See Sky Billiards, Inc. v. WolVol, Inc.*, No. 5:15-CV-02182, 2016 WL 7479428, at *2 (C.D. Cal. July 11, 2016) ("In order to plead restitution damages, Plaintiff would have to allege a specific amount gained by Defendant to which it has an ownership interest").   Accordingly, Count Four of the Complaint fails to state a claim upon which relief can be granted and, for these reasons, also requires dismissal.

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

NJ 231027900v2

## V.    PLAINTIFFS RELEASED ANY AND ALL CLAIMS

In addition to the reasons detailed above demonstrating that all of Plaintiffs' claims are implausible, Plaintiffs' Complaint should be dismissed because they have released any and all claims.  Under the Custodial Agreement, Plaintiffs expressly agreed to "release, indemnify, and hold [Provident] harmless for any and all claims, actions, proceedings, damages, judgments, liabilities, costs and expenses … arising from or in connection with this agreement."   § 8.03(a). Plaintiffs' claims are thus barred by this release.

## VI.    PLAINTIFFS FAIL TO STATE A CLAIM AGAINST ASCENSUS

Plaintiffs' claims against Ascensus require dismissal.   There are no allegations in the Complaint regarding any acts or omissions by Ascensus related to Plaintiffs' SDIRAs with Provident.   Plaintiffs' allegations are instead directed only at Provident, the entity with which Plaintiffs contracted.  (Compl. at ¶¶ 16(a), (b)) (Plaintiffs' "Woodbridge securities were held in an IRA account **at Provident**") (emphasis added); *id.* at ¶ 2 ("Plaintiffs are investors in [IRAs] for which **Provident** acted as legal custodian") (emphasis added).  Because Plaintiffs fail to allege facts specific to Ascensus, the Complaint fails to state a claim against Ascensus. *See Mandelbaum*, 787 F.Supp.2d 1226 (dismissing claim brought by SDIRA investors against corporate parent of SDIRA custodian because, *inter alia*, "Plaintiffs have failed to allege that [parent] was a party to any of the at-issue Agreements").   The Custodial Agreement here is between Plaintiffs and Provident alone. Ascensus is not a party.

Furthermore, the class period Plaintiffs allege is January 1, 2014 to December 31, 2017. (Compl. at ¶ 100.)  Although Plaintiffs assert that Ascensus entered into an agreement in October 2017 to acquire Provident, the closing of that transaction did not occur until January 2018.  (*Id*. at ¶ 18) (alleging that Ascensus announced in October 2017 that it "entered into an agreement to acquire" Provident, but ignoring the publicly available information establishing that Ascensus did not actually acquire its ownership interest in Provident until 2018).)  *See also Ascensus Announces Agreement to Acquire Polycomp Trust Company and Completion of Provident Trust Group Acquisition* (Jan. 23, 2018), available at https://trustprovident.com/ascensus-announces-agreement-

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

acquire-polycomp-trust-company-completion-provident-trust-group-acquisition/.[6]     Accordingly, Ascensus was not related to Provident at any point during the class period and, as such, could not be liable for any of Provident's alleged actions or omissions during the class period.

Plaintiffs' Complaint is nearly identical to the complaint the District of Colorado dismissed in *Mandelbaum*, 787 F.Supp.2d at 1236.  In *Mandelbaum*, the owners of SDIRAs sought to hold the custodian of the SDIRAs, as well as the parent company of the custodian, liable for losses sustained due to failed investments in Bernie Madoff's Ponzi scheme.   Like here, the complaint in *Mandelbaum* did not contain specific allegations against the parent company and, instead, "refer[red] generally to all defendants . . . and lodge[d] general allegations" that defendants breached their fiduciary duties and aided and abetted that breach. *Id.* at 1234.  The court dismissed the claims against the parent company because of the plaintiffs' "fail[ure] to allege that [the parent] was a party to any of the at-issue Agreements." *Id.* at 1235.  The same is true here – Plaintiffs do not allege that Ascensus was a party to any of the pertinent agreements.

Therefore, for all these reasons, the Complaint against Ascensus should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that Plaintiffs' Complaint be dismissed with prejudice in its entirety.

Dated this 8th day of October 2018.

Respectfully submitted,

GREENBERG TRAURIG LLP

*/s/ Mark E. Ferrario*

MARK E. FERRARIO, ESQ.
Nevada Bar No. 1625
JASON K. HICKS, ESQ.
Nevada Bar No. 13149
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
Email: ferrariom@gtlaw.com

---

[6] As the Ninth Circuit explained in *Khoja v. Orexigen Therapeutics, Inc.*, "[a] court may take judicial notice of [undisputed] matters of public record" in the context of a motion to dismiss.  899 F.3d 988, 999 (9th Cir. 2018).

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada  89135
Telephone: (702) 792-3773
Facsimile:  (702) 792-9002

hicksja@gtlaw.com

ROBERT H. BERNSTEIN, ESQ.
*(Pro Hac Vice Forthcoming)*
MICHAEL J. SLOCUM, ESQ.
*(Pro Hac Vice Forthcoming)*
500 Campus Drive, Suite 400
Florham Park, NJ 07932
Telephone: (973) 360-7900
Email: bernsteinrob@gtlaw.com
        slocumm@gtlaw.com

*Attorneys for Defendants*

GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

NJ 231027900v2

**GREENBERG TRAURIG, LLP**
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that on the 8th day of October, 2018, a true and correct copy of the foregoing ***Motion to Dismiss Plaintiffs' Complaint*** was filed electronically via the Court's CM/ECF system.  Notice of filing will be served on all parties by operation of the Court's EM/ECF system, and parties may access this filing through the Court's CM/ECF system.


*/s/ Andrea Lee Rosehill*

An employee of GREENBERG TRAURIG, LLP

NJ 231027900v2