UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

NOEL C. MURRAY, *et al.*,

Plaintiffs,

v.

PROVIDENT TRUST GROUP, LLC, AND ASCENSUS, LLC,

Defendants.

Case No. 2:18-cv-01382-MMD-GWF

ORDER

## I. SUMMARY

Plaintiffs Noel C. Murray and Swarna Perera seek to represent a class of investors who lost substantial amounts of money they were saving for retirement when they invested in the Woodbridge real-estate Ponzi scheme through their self-directed individual retirement accounts ("SDIRAs"), against Defendant Provident Trust Group,[1] who provided custodial and administrative services for Plaintiffs' SDIRAs. Defendant has moved to dismiss all of Plaintiffs' claims against it under Federal Rule of Civil Procedure 12(b)(6) (the "Motion").[2] (ECF No. 21.) Because the contract that Plaintiffs allege governs their relationship with Defendant contradicts Plaintiffs' breach of contract and fiduciary duty allegations in their Complaint, the economic loss doctrine applies to their

---

[1] Plaintiffs also sued Provident's current corporate parent, Ascensus, LLC. (ECF No. 1.) Defendants moved to dismiss claims against Ascensus, LLC, arguing that the Complaint does not contain specific allegations against Ascenus. (ECF No. 21 at 20-21.) Plaintiffs do not oppose dismissal of claims against Ascensus. (ECF No. 30 at 24.) The Court will dismiss all of Plaintiffs' claims against Ascensus, LLC without prejudice. The remainder of this order will refer to Provident as "Defendant," as Provident is the sole remaining Defendant in this case.

[2] Plaintiffs filed a response (ECF No. 30), and Defendant filed a reply (ECF No. 44).

negligence claim, and the applicable contract precludes their unjust enrichment claim—and as further discussed below—the Court will grant Defendant's Motion.

## II. BACKGROUND

The following facts are adapted from Plaintiffs' Complaint, which asserts a class action under the Class Action Fairness Act. Plaintiffs seek to represent a class of investors who invested in the Woodbridge group of companies (through the "Woodbridge Securities") by moving retirement money into SDIRAs for which Defendant was the custodian. (ECF No. 1 at 2.) While some other financial services companies declined to allow their customers to hold Woodbridge Securities in their SDIRA accounts, Defendant did, and failed to take any steps to ascertain the nature, assets underlying, or value of the Woodbridge Securities. (*Id.* at 5.) It turned out the Woodbridge Securities were part of a Ponzi scheme orchestrated by Robert H. Shapiro. (*Id.* at 5-6, 23-37.)

Defendant continued to accept Woodbridge Securities as custodian from other customers that Woodbridge steered towards Defendant even after federal and state regulatory agencies had concluded Shapiro was operating Woodbridge in a way that broke various laws. (*Id.* at 6-9.) Despite the fact these investigations and related charges were public, Defendant did not notify any of its customers who held Woodbridge Securities in their SDIRAs about them. (*Id.* at 9.) At least one company similarly situated to Defendant did. (*Id.* at 42.) And while the Woodbridge Securities were valueless, Defendant continued to list their value at or near the price Plaintiffs paid for them in Plaintiffs' periodic account statements. (*Id.* 42-43.) Plaintiff Noel C. Murray invested $54,148.84 in Woodbridge Securities held in a SDIRA for which Defendant was the custodian, and Plaintiff Dr. Swarna Perera invested $600,000. (*Id.* at 11.) Plaintiffs' relationship with Defendant is governed by a contract Plaintiffs attached to, and explicitly referred to in, their Complaint (ECF No. 1-2, the "2017 Contract"). (*Id.* at 4-5, 14-15, 20-21, 45.)

The Complaint asserts the following claims: (1) breach of contract under state and federal law; (2) breach of fiduciary duty under state and federal law; (3) negligence and

gross negligence; and (4) unjust enrichment. (*Id.* at 45-49.) Defendant's Motion seeks dismissal of all four claims. (ECF No. 21.)

## III. LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555.) "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted). And it must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *See id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *See id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is

3

entitled to relief." *Id.* at 679 (internal quotation marks omitted). This is insufficient. When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *See Twombly*, 550 U.S. at 570.

## IV. DISCUSSION

While the Court sympathizes with Plaintiffs regarding their alleged substantial losses of retirement funds, they have failed to state a claim against Defendant at this time. Their breach of contract and breach of fiduciary duty claims fail for the most part because their allegations are directly contradicted by the terms of 2017 Contract upon which they rely to establish them. Plaintiffs' negligence claim is barred by the economic loss doctrine. Plaintiffs' unjust enrichment claim fails because Plaintiffs acknowledge the existence of the valid 2017 Contract. The Court will further address Defendant's Motion with respect to each of Plaintiffs' alleged causes of action below.

### A. Preliminary Matters

But before the Court addresses Defendant's Motion in the context of Plaintiffs' asserted causes of action, the Court briefly addresses several preliminary matters. First, Plaintiffs cite the Employee Retirement Income Security Act of 1974 ("ERISA") throughout their Complaint. (ECF No. 1 at 3, 13, 14.) However, Plaintiffs do not allege in their Complaint that the SDIRAs at issue were established or maintained by an employer or employee organization. (*See generally id.*) Therefore, ERISA does not apply. *See, e.g., Charles Schwab & Co. v. Debickero*, 593 F.3d 916, 919 (9th Cir. 2010) (finding that an individual retirement account created and maintained by an individual was not subject to ERISA). To the extent Plaintiffs are alleging an ERISA claim, that claim is therefore dismissed for failure to state a claim.

Second, Plaintiffs attached the 2017 Contract to their Complaint, which they allege governs their relationship with Defendant. (ECF No. 1 at 4-5, 14-15, 20-21, 45.) Plaintiffs then attempted to submit and rely on what they represent is an earlier version of that same contract in their response to Defendant's Motion. (ECF Nos. 30 at 4-13, 30-6 (the "2012 Contract," which is the alleged earlier version of the contract).) However,

4

1    Plaintiffs have not amended their Complaint, nor have they moved to amend their
2    Complaint. *See* LR 15-1 (providing the Court's amendment procedure). Thus, the 2012
3    Contract is outside the scope of Plaintiffs' Complaint, which explicitly relies on, and
4    incorporates by reference, the 2017 Contract. As such, the Court exclusively considers
5    the 2017 Contract in ruling on Defendant's Motion.[3]

### B. First Claim: Breach of Contract

"A breach of contract claim requires a plaintiff to show: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damage because of the breach." *Kerr v. Bank of Am., N.A.*, Case No. 3:15-cv-00306-MMD-WGC, 2016 WL 54670, at *2 (D. Nev. Jan. 5, 2016) (citations omitted). Here, neither party questions the existence of a contract. Instead, Plaintiffs argue Defendant breached certain duties provided for in the 2017 Contract, and Defendant responds that the 2017 Contract either imposed no such duties on Defendant, or that Defendant did not breach them per the very terms of that contract. In response, Plaintiffs point to three specific contractual duties Plaintiffs allege Defendant has breached. (ECF No. 30 at 9-13.) The Court therefore addresses each of these three alleged breaches, in turn, below.

### 1. Defendant's Alleged Issuance of Materially Inaccurate Reports

Plaintiffs argue Defendant breached Section 8.16 of the 2017 Contract by failing to provide an accurate annual valuation of Woodbridge Securities to Plaintiffs, and instead continuing to report the value of those securities at or near the price Plaintiffs paid for them. (ECF No. 30 at 9-11.) Defendant counters it did not, and could not, breach Section 8.16 of the 2017 Contract by failing to provide an accurate annual valuation of the Woodbridge Securities to Plaintiffs because that same clause assigned this duty to Plaintiffs. (ECF No. 44 at 4-6.) The Court agrees with Defendant.

///

---

[3]Because the Court has not considered Plaintiff's allegations as they relate to the 2012 Contract, this order does not necessarily foreclose Plaintiff from asserting other claims based on the 2012 Contract.

Section 8.16 of the 2017 Contract states that Defendant has to report an annual valuation to the IRS, but Plaintiffs "must provide [Defendant] with a credible valuation of your IRA assets in order for us to generate accurate IRS reporting." (ECF No. 1-2 at 8.) Further, the 2017 Contract gives Defendant the right to get a third party valuation at Plaintiffs' expense if Plaintiffs fail to provide one. (*Id.*) Read together, these terms support Defendant's argument that it was Plaintiffs' obligation, not Defendant's, to prepare an annual valuation of the assets in Plaintiffs' SDIRAs. Defendant simply cannot breach the valuation duty Plaintiffs seek to impose on it because the 2017 Contract upon which Plaintiffs rely imposed no such duty. Plaintiffs therefore fail to state a claim for breach of contract based on their annual valuation theory.

### 2. Defendant's Alleged Comingling of Investor Funds

Plaintiffs next argue that Defendant breached the 2017 Contract by impermissibly comingling funds, presumably in violation of Section III(1). (ECF No. 30 at 11-12 (referring apparently to ECF No. 1-2 at 2 ("No part of the custodial account funds may be invested in life insurance contracts, nor may the assets of the custodial account be commingled with other property except in a common trust fund or common investment fund (within the meaning of section 408(a)(5)).").) Plaintiffs offer evidence in support of this argument in response to Defendant's Motion, in the form of an unexecuted "Intercreditor Agreement" between other people—not Plaintiffs—who appear to have invested in Woodbridge Securities through SDIRAs administered by Defendant. (ECF No. 30 at 11-12 (citing ECF No. 30-5).) Defendant counters that the "Intercreditor Agreement" is irrelevant and does not show Defendant comingled funds because it is unexecuted, and Plaintiffs do not look to have been intended parties to it had it been executed. (ECF No. 44 at 6-7.) Therefore, Defendant argues, Plaintiffs are left with nothing more than a mere conclusory statement that Defendant impermissibly comingled funds, meriting dismissal. (*Id.*)

In fact, Plaintiffs' Complaint alleges even less. Plaintiffs say their comingling breach of contract claim is found in paragraphs 24 and 112 of their Complaint. (ECF No.

30 at 11.) But paragraphs 24 and 112 of the Complaint merely state an alleged duty not to impermissibly comingle funds—neither states that Defendant impermissibly comingled any funds. (ECF No. 1 at 14-15, 46.) Thus, Plaintiffs have not even alleged that Defendant comingled any funds, and therefore have not stated a claim for breach of contract based on such comingling. Further, the Court agrees with Defendant that the "Intercreditor Agreement" is irrelevant to Plaintiffs' purported comingling claim, as it is unexecuted, does not list either Plaintiff, and does not make clear whether the intended comingling would be impermissible under applicable laws and regulations. However, as it appears Plaintiffs intend to allege that Defendant impermissibly comingled funds, and the 2017 Contract does appear to prohibit certain types of asset comingling, Plaintiffs may file an amended complaint including such allegations, assuming Plaintiffs can find some factual support for them.

### 3. Defendant's Alleged Acceptance of Securities Not in Good Form on Their Face

Plaintiffs finally allege that Defendant breached the 2017 Contract by taking "few or no steps to ascertain the nature, assets underlying, or value of Woodbridge Securities that they held as custodian[,]" even after government entities had concluded they were securities. (ECF No. 30 at 13 (citing ECF No. 1 at 5-9); *see also* ECF No. 1 at 5 (from which the quotation is taken).) Defendant counters that it did not, and cannot have, breached any duty in the 2017 Contract based on these allegations because the 2017 Contract clearly states Plaintiffs are responsible for due diligence on any and all investments, and Defendant has no duty to perform any due diligence on any of Plaintiffs' investments, or monitor any irregularities about their investments. (ECF No. 44 at 7 (citing ECF No. 1-2 at 5-6).) The Court again agrees with Defendant. The 2017 Contract squarely places the obligation to conduct due diligence on, or otherwise verify, any and all investments on Plaintiffs. (ECF No. 1-2 at 5-6.) Thus, Defendant cannot have breached the 2017 Contract by failing to catch anything unusual about the Woodbridge Securities—it had no obligation to even look. (*Id.*)

In sum, the Court will grant Defendant's Motion as to Plaintiffs' breach of contract claim. However, because the Court cannot find that amendment is futile with respect to certain aspects of Plaintiff's breach of contract claim, the Court will grant Plaintiffs leave to amend those aspects of their claim. *See* Fed. R. Civ. P. 15(a); *see also, e.g., DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("If a complaint is dismissed for failure to state a claim, leave to amend should be granted "unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency[,]'" though a "district court does not err in denying leave to amend where the amendment would be futile.") (citations omitted). In particular, the Court will grant Plaintiffs leave to file an amended complaint either as to their comingling claim or based on some contract other than the 2017 Contract, but Plaintiffs' breach of contract claim is otherwise dismissed with prejudice because amendment would be futile. Plaintiffs' inaccurate reporting and acceptance of securities not in good form breach of contract claims fail as a matter of law because they are expressly foreclosed by the terms of the 2017 Contract.

### C. Second Claim: Breach of Fiduciary Duty

"A breach of fiduciary duty claim requires Plaintiffs to show the existence of a fiduciary duty, the breach of that duty, and damages proximately caused by the breach." *Kerr*, 2016 WL 54670, at *4 (citation omitted). "A fiduciary relation exists between two persons when one of them is under a duty to act for the benefit of another upon matters within the scope of the relation." *Id.* (quotation omitted). Said otherwise, "[f]iduciary relationships arise where the parties do not deal on equal terms and there is special trust and confidence placed in the superior party." *Id.* (citation omitted).

Defendant argues Plaintiffs' breach of fiduciary duty claim fails because Defendant owed Plaintiffs no fiduciary duty. (ECF No. 21 at 13.) Defendant points out that Sections 8.03(a) and 8.05(b) of the 2017 Contract clearly state Defendant is not a fiduciary and owes Plaintiffs no such duty. (*Id.* (citing ECF No. 1-2 at 3, 5.).) Defendant further argues it owed Plaintiffs no fiduciary duty under federal law. (*Id.* at 14-15.)

Defendant also argues Plaintiffs' breach of fiduciary claim fails to the extent it is premised on Nevada law because the 2017 Contract makes clear Defendant owes Plaintiffs no fiduciary duty. (*Id.* at 16.)

Plaintiffs appear to concede their breach of fiduciary duty claim is untenable to the extent they allege it was based on the 2017 Contract or federal law—because they address neither argument in their response to Defendant's Motion—and instead argue they have stated a claim under Nevada law. (ECF No. 30 at 16-18.) Defendant replies that Plaintiffs have also failed to state a claim for breach of fiduciary duty under Nevada law because NRS § 669.045 cannot be read to create or expand common law duties, meaning that no Nevada statute can impose fiduciary duties on Defendant where the 2017 Contract explicitly says Defendant is not a fiduciary, and other courts have held custodians like Defendant owe no state law duties to other plaintiffs like Plaintiffs. (ECF No. 44 at 9-10.) Further, Defendant argues NRS § 163.5548 precludes Plaintiffs' breach of fiduciary duty claim to the extent it is premised on state law. (*Id.* at 10.)

The Court agrees with Defendant in part because it is persuaded by Defendant's reliance on *Lewis v. Delaware Charter Guarantee & Tr. Co.*, Case No. 14-CV-1779 KAM, 2015 WL 1476403, at *11-*12 (E.D.N.Y. Mar. 31, 2015), *aff'd in relevant part as modified*, 642 F. App'x 23 (2d Cir. 2016). (ECF No. 44 at 9-10.) The *Lewis* court dismissed the plaintiffs' breach of fiduciary duty claim under similar circumstances because the governing contract specified that the defendant was not a fiduciary, various federal courts around the country "have found that self-directed IRAs do not constitute trusts under state law and, accordingly, IRA trustees do not owe duties of care independent from the duties defined in their trust agreements," and the plaintiffs' fiduciary claims were foreclosed by the failure of their breach of contract claims, which the plaintiffs alleged defendant breached based on the same conduct underlying their breach of contract claim. *Lewis*, 2015 WL 1476403, at *11-*12. The Court finds that the *Lewis* analysis applies with equal force here.

The 2017 Contract clearly states Defendant is not a fiduciary. (ECF No. 1-2 at 3, 5.) Other courts have noted agreements like the 2017 Contract do not create trust-type relationships when they specify that the financial services company owes no fiduciary duty. *See, e.g., Goldblatt v. F.D.I.C.*, 105 F.3d 1325, 1329 (9th Cir. 1997). Further, Plaintiffs' breach of fiduciary duty claim is redundant of their breach of contract claim, where, as here, both are based on the same alleged conduct. *See Lake at Las Vegas Inv'rs Grp., Inc. v. Pac. Malibu Dev. Corp.*, 867 F. Supp. 920, 924 (D. Nev. 1994), *aff'd*, 78 F.3d 593 (9th Cir. 1996) (finding in effect that a breach of fiduciary duty claim is redundant to a breach of contract claim and should be dismissed when the underlying breach of contract claim is dismissed). The Court will therefore dismiss Plaintiffs' breach of fiduciary duty claim.

### D. Third Claim: Negligence and Gross Negligence

To prevail on a negligence claim under Nevada law, "a plaintiff must establish four elements: (1) the existence of a duty of care, (2) a breach of that duty, (3) legal causation, and (4) damages." *Sanchez ex rel. Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280 (Nev. 2009). "Gross negligence is very great negligence, or the absence of slight diligence, or the want of even scant care, or indifference to present legal duty, or utter forgetfulness of legal obligations so far as other persons may be affected." *Kawamura v. Boyd Gaming Corp.*, Case No. 2:13-cv-203-JCM-GWF, 2015 WL 4622622, at *5 (D. Nev. Aug. 3, 2015) (internal punctuation, quotation marks, and citation omitted).

Defendant argues that Plaintiffs' negligence and gross negligence claim is barred by the economic loss doctrine. (ECF No. 21 at 18-19.) Plaintiffs counter that the doctrine does not apply because Defendant is a financial intermediary that provided financial services to Plaintiffs, and other courts have allowed tort claims to proceed in negligent misrepresentation cases, and professional negligence actions against accountants, real estate appraisers, and insurance brokers. (ECF No. 30 at 20-21.) Plaintiffs do not

explain how the latter half of this sentence makes the former true. Regardless, the Court agrees with Defendant.

"The economic loss doctrine is a judicially created rule that . . . bars unintentional tort actions when the plaintiff seeks to recover 'purely economic losses.'" *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 85-86 (Nev. 2009). Its purpose is "to shield defendants from unlimited liability for all of the economic consequences of a negligent act, particularly in a commercial or professional setting, and thus to keep the risk of liability reasonably calculable." *Id.* at 83. It "draws a legal line between contract and tort liability that forbids tort compensation for certain types of foreseeable, negligently caused, financial injury[,]" and instead allows "tort recovery only to those plaintiffs who have suffered personal injury or property damage." *Id.* at 87 (internal punctuation, quotation marks, and citations omitted).

The economic loss doctrine applies here. Plaintiffs have not alleged any personal injury or property damages. (ECF No. 1.) They have only alleged economic losses. Further, the purpose of the doctrine is served by its application here, shielding Defendant from unlimited liability in the professional and commercial setting in which it interacted with Plaintiffs. *See Terracon*, 206 P.3d at 89. In addition, the cases Plaintiffs rely on to support their argument are distinguishable. (ECF No. 30 at 21 (first citing *Burns v. Delaware Charter Guarantee & Trust Co*, 805 F. Supp. 2d 12, 25-26 (S.D.N.Y. 2011) (applying New York and New Jersey law), then citing *Grund v. Delaware Charter Guarantee & Trust Co*, 788 F. Supp. 2d 226, 246-47 (S.D.N.Y. 2011) (applying New York and New Jersey law)).) In addition to not binding this Court, in both of Plaintiffs' cited cases, the governing contract carved out negligence and intentional conduct from its coverage. *See Burns*, 805 F. Supp. 2d at 26; *Grund*, 788 F. Supp. 2d at 247. Here, the 2017 Contract contained no such carve-out. (ECF No. 1-2.) That matters because the *Burns* and *Grund* courts entirely relied on these carve-outs in finding the economic loss doctrine did not apply, because it meant that the plaintiffs' negligence claims fell outside the scope of the governing contracts. *See Burns*, 805 F. Supp. 2d at 26; *Grund*,

788 F. Supp. 2d at 247. *Burns* and *Grund* therefore do not support Plaintiffs' position on this point. In sum, the Court finds the economic loss doctrine precludes Plaintiffs' negligence and gross negligence claim here. The Court will therefore dismiss Plaintiffs' third claim for relief.

### E. Fourth Claim: Unjust Enrichment

"The phrase 'unjust enrichment' is used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor." *Kerr*, 2016 WL 54670, at *3 (citation omitted). Unjust enrichment occurs when someone retains a benefit that equitably belongs to another, but only when there is no legal contract between the parties. *See id.*

Defendant argues Plaintiffs' unjust enrichment claim fails as a matter of law because the 2017 Contract covers the same subject matter that forms the basis of Plaintiffs' unjust enrichment claim. (ECF No. 21 at 19.) Plaintiffs counter they should be allowed to plead their unjust enrichment claim in the alternative to their breach of contract claim. (ECF No. 30 at 34.) The Court again agrees with Defendant. While it is generally true that alternative pleading is permissible, Plaintiffs' unjust enrichment claim fails as a matter of law because Plaintiffs themselves allege their relationship with Defendants is governed by the 2017 Contract. (ECF No. 1 at 4-5, 14-15, 20-21, 45.) *See also Lipshie v. Tracy Inv. Co.*, 566 P.2d 819, 824 (Nev. 1977) ("To permit recovery by quasi-contract where a written agreement exists would constitute a subversion of contractual principles."). Nowhere do Plaintiffs argue they did not enter into a contract with Defendant, the 2017 Contract was somehow invalid, or it does not cover Defendant's alleged wrongful conduct here. The 2017 Contract therefore precludes Plaintiffs' unjust enrichment claim, and the Court will dismiss it as well.

### V. CONCLUSION

The Court notes the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and

determines they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Defendant's motion to dismiss (ECF No. 21) is granted. Dismissal is with prejudice except as discussed herein. Plaintiffs will be given leave to file an amended complaint to assert a breach of contract claim as provided herein within 15 days. Failure to file an amended complaint within this timeframe will result in dismissal of the breach of contract claim with prejudice.

DATED THIS 23rd day of April 2019.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE