UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| NOEL C. MURRAY, *et al.*, | Case No. 2:18-cv-01382-MMD-GWF |
| Plaintiffs, | |
| v. | ORDER |
| PROVIDENT TRUST GROUP, LLC, AND ASCENSUS, LLC, | |
| Defendants. | |

**I.    SUMMARY**

Plaintiffs Noel C. Murray, Swarna Perera, and Joyce Friedman seek to represent a class of investors who lost substantial amounts of money they were saving for retirement when they invested in the Woodbridge real-estate Ponzi scheme through their self-directed individual retirement accounts ("SDIRAs"). Plaintiffs filed this action against Defendant Provident Trust Group, who provided custodial and administrative services for Plaintiffs' SDIRAs. Defendant has moved to dismiss Plaintiffs' remaining contract claim (the "Motion") in the First Amended Complaint ("FAC").[1] (ECF No. 49.) For the reasons explained below, the Court will grant Defendant's Motion as to Plaintiff Friedman and deny the Motion as to Plaintiffs Murray and Perera.

**II.    BACKGROUND**

The Court incorporates by reference the background section in its prior order (ECF No. 45 at 2-3) and does not recite it here. In that order, the Court dismissed all claims in the initial complaint with prejudice, but granted Plaintiffs leave to file an

---

[1]The Court has reviewed Plaintiffs' response (ECF No. 52), and Defendant's reply (ECF No. 56).

1 amended complaint to assert a breach of contract claim based on the allegation that "Defendant impermissibly commingled funds." (ECF No. 45 at 7.) Defendants now move to dismiss this claim.

### III. LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555.) "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted). And it must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *See id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *See id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of

1  misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is
2  entitled to relief." *Id.* at 679 (internal quotation marks omitted). This is insufficient. When
3  the claims in a complaint have not crossed the line from conceivable to plausible, the
4  complaint must be dismissed. *See Twombly*, 550 U.S. at 570.

**IV.   DISCUSSION**

Defendant's Motion contends that Plaintiffs have not shown a breach of contract (ECF No. 49 at 11-12) and, in any event, Plaintiffs' contract claim is barred by an exculpatory clause (*id.* at 14). The Court disagrees with Defendant's first argument but agrees with its second argument only as to Plaintiff Friedman's claim. The Court will only permit Plaintiffs Murray and Perera's claim to proceed.

"A breach of contract claim requires a plaintiff to show: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damage because of the breach." *Kerr v. Bank of Am., N.A.*, Case No. 3:15-cv-306-MMD-WGC, 2016 WL 54670, at *2 (D. Nev. Jan. 5, 2016) (citations omitted). Here, neither party questions the existence of a contract. Instead, the parties dispute whether Defendant breached Article III(1) (the "Article"), which is identical in both 2012 and 2017 Agreements[2] and reads:

> No part of the custodial account funds may be invested in life insurance contracts, *nor may the assets of the custodial account be commingled with other property* except in a common trust fund or common investment fund (within the meaning of section 408(a)(5)).

(ECF Nos. 46-2, 46-3 (emphasis added).)

Defendant argues that Woodbridge—not Defendant—commingled the proceeds of sales securities, which Defendant had no duty to prevent. (ECF No. 46 at 12.) Plaintiffs counter that Defendant commingled investor assets by knowingly signing documents that contemplated the pooling of investor funds into loans to third parties (ECF No. 52 at 10-11). Defendant also argues that Plaintiffs' funds ceased to be "assets

---

[2]The FAC references and attaches the 2012 Agreement. (ECF No. 46-2; *see* ECF No. 45 at 4-5.) As such, the Court will consider that agreement. (*See* ECF No. 46 at 13 (alleging that 2012 and 2017 Agreements were in force for most of the class period).)

of the custodial account" when Defendant purchased Woodbridge securities per Plaintiffs' instructions. (ECF No. 46 at 11.) Plaintiffs rebut that Defendant was still holding the Woodbridge securities for Plaintiffs' benefit when it was commingled (ECF No. 52 at 10-11; *see also* ECF No. 46 at 5.)

Despite the parties' conflicting interpretation of the Article, the Article does not definitively support either side. Specifically, the Article is unclear with regard to the following dispositive issues: (1) whether the Article prohibits only direct or indirect commingling, or both[3]; (2) whether Defendant has a duty to prevent commingling by others; and (3) what constitutes "assets of the custodial account."[4] While the Article contains identical language to 26 U.S.C. § 408, the Court is not aware of any cases interpreting § 408 in a manner that addresses any of the foregoing issues. Given the Article's ambiguity, the Court denies Defendant's Motion on the breach of contract issue.

Defendant contends even if it breached the Article, both 2012 and 2017 Agreements "contain broad exculpatory clauses [(the "Releases")] whereby Plaintiff agreed to release Defendant from any and all claims of damages arising from Defendant's compliance with Plaintiff's investment directions." (ECF No. 49 at 14.) The Court only partially agrees—while the Releases do not apply to Plaintiffs Murray and Perera, they do bar Plaintiff Friedman's contract claim.

The 2012 Agreement provides that:

---

[3] Defendant relies on distinguishable cases wherein the contractual provision clearly prohibits trustees from directly commingling investor assets. *See Mandelbaum v. Fiserv, Inc.*, 787 F. Supp. 2d 1226, 1252 (D. Colo. 2011) ("*The Trustee as trustee of the Trust assets entrusted to it under the Plan shall not commingle* the Trust with any other property it holds except in a common trust fund or common investment fund.") (emphasis added); *Hines v. FiServ, Inc.*, No. 808-cv-2569-T-30AEP, 2010 WL 1249838, at *6 (M.D. Fla. Mar. 25, 2010) ("*The trustee, as trustee of the assets entrusted to it under the plan, shall not commingle* the Trust with any other property it holds except in a common trust fund or common investment fund.") (emphasis added).

[4] Unlike the case that Defendant relies on, *Grund v. Delaware Charter Guarantee & Tr. Co.,* 788 F. Supp. 2d 226, 240 (S.D.N.Y. 2011) (alleging that defendants turned over assets to a third party and failed to prevent said party's commingling), the FAC alleges that Defendant was holding the Woodbridge securities for Plaintiffs' benefit when it was commingled. (ECF No. 21 at 10; ECF No. 46 at 5.)

4

> [Plaintiff] agree[s] to release . . . all claims, damages, liability, actions, costs, expenses . . . and responsibility for any loss . . . in connection with or by reason of any sale or investment made or action taken . . . pursuant to and/or in connection with any investment transaction directed by [Plaintiff]. . . .

(ECF No. 46-2 at 3 (Art. VIIII, Sec. 8.03(a).) Furthermore, both 2012 and 2017 Agreements provide in identical language:

> UNDER NO CIRCUMSTANCES SHALL CUSTODIAN . . . BE SUBJECT TO OR LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, SPECIAL, EXEMPLARY OR SIMILAR DAMAGES, INCLUDING WITHOUT LIMITATION, DAMAGES OR COSTS INCURRED . . . THAT MAY ARISE OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR CUSTODIAN OR ADMINISTRATOR COMPLYING WITH [PLAINTIFFS'] DECISIONS, REGARDLESS IF SUCH DAMAGES ARE BASED IN CONTRACT . . .

(*Id.* at 3-4 (Art. VIII, Sec. 8.03(a)); ECF No. 46-3 at 3-4 (same).)

The Releases do not apply to Plaintiffs Murray and Perera because there is no allegation that they instructed Defendant to purchase Woodbridge securities. "[D]rawing all reasonable inferences from the [FAC] in [Plaintiffs'] favor," the Court finds that the FAC at most shows that Plaintiffs entrusted Defendant with funds and Defendant subsequently purchased Woodbridge securities. (ECF No. 46 at ¶¶ 105-07, 110-12, 114; ECF Nos. 46-8, 46-9,[5] 46-10, 46-11, 46-13, 46-14.[6]) *Doe v. United States,* 419 F.3d 1058, 1062 (9th Cir. 2005) Because the Releases do not apply here, the Court denies the Motion as to Plaintiffs Murray and Perera.

---

[5] Plaintiff Perera's wire transfer states:

BUY
PROMISSORY NOTE TO WOODBRIDGE MORTGAGE

(ECF No. 46-9 at 2, 4.) Drawing all reasonable inferences from the FAC in favor of Plaintiffs, the Court interprets this line item as a description—not instruction—of Defendant's purchase of Woodbridge Securities.

[6] The Joinder Agreement, attached to the FAC, shows that Plaintiff Murray agreed to become a party to the Operating Agreement of Woodbridge Mortgage Investment Fund 3, LLC in order to hold a security in the LLC. (ECF No. 46 ¶ 114; ECF No. 46-14.) But this Joinder Agreement is not a written instruction to Defendant.

However, the Releases do preclude Plaintiff Friedman's contract claim. Plaintiffs attached to the FAC two Direction of Investment forms in which Plaintiff Friedman instructed Defendant to purchase securities from Woodbridge, specifically a "Promissory Note/Mortgage" (ECF No. 46-17 at 2-4) and a "Private Placement Memorandum" (*id.* at 5-7). The Releases clearly bar Plaintiff Friedman from seeking any damages arising from Defendant's compliance with her written directions. (ECF No. 46-2 at 3-4; ECF No. 46-3 at 3-4.) *See Contreras v. Am. Family Mut. Ins. Co.*, 135 F. Supp. 3d 1208, 1229 (D. Nev. 2015) ("Under Nevada contract law, exculpatory clauses are generally valid.") (citation omitted)). Plaintiffs claim the Releases are invalid, but they make conclusory assertions and cursory references to irrelevant cases.[7] This suggests that Plaintiffs can provide no other basis for invalidating the Releases. As such, the Court dismisses Plaintiff Friedman's contract claim without leave to amend. [8] *See Carbajal v. HSBC Bank U.S.A., N.A.*, No. CV 16-9297 PSG FFM, 2017 WL 7806587, at *4 (C.D. Cal. Sept. 1, 2017) (dismissing contract claim without leave to amend based on an exculpatory clause and because "[the court did] not believe that Plaintiff can plausibly allege additional facts to show that the exculpatory clause . . . is unconscionable").

///

///

---

[7]Because Defendant asserts that the Releases preclude Plaintiff Friedman's contract claim, Plaintiff's cited cases are irrelevant—they involved releases for negligence, intentional misrepresentation and intentional tort. (ECF No. 52 at 17-18.) *See Contreras*, 135 F. Supp. 3d at 1229 (setting forth a standard that applies only to "contracts providing for immunity from liability for *negligence*") (emphasis added); *Lawyers Title of Nevada, Inc. v. Bonar*, 381 P.3d 633 at *2 (2012) (unpublished) (stating that exculpatory clauses releasing liability for intentional or willful tort and intentional misrepresentation are void on grounds of public policy).

[8]Courts can dismiss a case based on an affirmative defense (like an exculpatory clause) where such defense is ascertainable from the complaint or its exhibits. *See ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.") Here the Plaintiffs have attached the 2012 and 2017 Agreements—which contain the Releases—to their Complaint. (ECF Nos. 46-2, 46-3.) The Court can therefore dismiss Plaintiff Friedman's contract claim based on the Releases.

## V. CONCLUSION

The Court notes the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Defendant's motion to dismiss (ECF No. 49) is granted as to Plaintiff Friedman, but it is denied as to Plaintiffs Murray and Perera.

DATED THIS 18th day of December 2019.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE